UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FJN LLC, ET AL.,                                    Case No.  09-14262

        Plaintiffs,                              HONORABLE ARTHUR J. TARNOW
v.                                                  SENIOR UNITED STATES DISTRICT JUDGE

VIJAY PARAKH, ET AL.,                               HONORABLE MARK A. RANDON
                                                    UNITED STATES MAGISTRATE JUDGE
        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS [31] AND GRANTING PLAINTIFFS' MOTION TO DISMISS STATE-LAW CLAIMS [39]**

      This case involves the allegedly discriminatory actions of Harrison Township and its Building Official, Vijay Parakh, in refusing to issue a certificate of occupancy to the Plaintiffs. Plaintiffs' main argument is that Defendants have failed to follow the applicable ordinances and have simply refused to issue a "Certificate of Occupancy" for an expansion of Plaintiffs' restaurant.

      For the reasons stated below, Defendants' Motion to Dismiss and for Judgment on Pleadings is GRANTED IN PART and DENIED IN PART [31]. Plaintiffs' Motion to Dismiss [39] their state-law claims without prejudice is GRANTED.

### I. Procedural History

      Plaintiffs filed their complaint in this Court on October 30, 2009.  An "Emergency Motion of Plaintiffs for a Temporary Restraining Order and/or Preliminary Injunction" was filed by Plaintiffs on November 11, 2009.  A conference was held on November 23, 2009 at which the parties agreed to facilitation, but on December 11, 2009, the parties informed the Court that facilitation was not successful.

      Defendants answered the Complaint on December 16, 2009.  A hearing on the preliminary injunction and TRO was held on January 14, 2010, with the injunction being neither denied nor granted, as Plaintiffs had cured some but not all deficiencies and Defendants were to inspect the site shortly thereafter.

      On April 28, 2010, Plaintiffs filed an additional Emergency Motion for Temporary Restraining Order and Preliminary Injunction, as a Temporary Certificate of Occupancy that had

been issued to Plaintiffs was set to expire. This was resolved without hearing by the Temporary Certificate being extended until June 1, 2010. On April 11, 2011, the instant motion to dismiss and for judgment on the pleadings was filed.

In a progress report submitted in June, the following information was provided: An inspection by Harrison Township Officials of the Gino's Surf property and constructed additions occurred on June 9, 2011. On June 15, 2011, the Township drafted a report that contains five (5) deficiencies in Phase II, and listed other deficiencies in landscaping and parking areas. Plaintiffs assert that the five deficiencies are new and "not required in order for plaintiffs to receive a Certificate of Occupancy." Plaintiffs allege the other deficiencies concern Phase I, which already has a Certificate of Occupancy. Plaintiffs assert that Defendants "cannot now demand plaintiffs take corrective action to have any portion of Phase I comply with the site plan."

In the progress report, Defendants state that Phase II has been operating without a Temporary Certificate of Occupation since May 2010. Defendants note the five deficiencies in the building; Defendants also contend that various "site plan deficiencies" must be cured prior to the issuing of a Certificate of Occupancy.

In September 2011 the parties submitted an independent inspection report that noted a few outstanding issued but concluded that after their correction the Phase II building would be "safe for occupation." The report concluded that the requirements of obtaining a "Certificate of Occupancy" had been met and stated that the Township had insisted on ever-shifting correction to various deficiencies.

## II. Factual Background

This case concerns the restaurant "Gino's Surf," located in Harrison Township, and has at all times operated with a Certificate of Occupancy from the township. In 2006, the Township's Planning Commission approved the site plan for "Phase I" additions to the restaurant, to include a "Gazebo and Tiki Bar."

At some later date, the restaurant submitted a proposed site plan for "Phase II" additions to the restaurant. These additions would house an "Antique Car Museum and Restaurant" to house Plaintiff Nazar's antique cars. At a May 17, 2007 meeting, the Planning Commission approved the site plan for Phase II.

**Certificate of Occupancy for Phase I and Phase II**

On January 10, 2008, the Township issued a Certificate of Occupancy for the "Phase I" additions to the restaurant. Sometime prior to February 6, 2009, Gino's Surf completed the construction of "Phase II." Plaintiffs allege that they obtained and passed all electrical, mechanical, and building inspections necessary to obtain a Certificate of Occupancy.

Section 16.03 of the Harrison Township Zoning Ordinances governs the issuance of a Certificate of Occupancy. Specifically, Section 16.03(6) governs the application process:

> Certificates of occupancy shall be applied for in writing to the building official coincidentally with application for building permits, and shall be issued within five days after notification of completion of the building, if it is found that the building or structure, or part thereof, or the use of the land is in accordance with the provisions of this ordinance. If such certificate is refused for cause, the applicant shall be notified of such refusal and the cause thereof within the aforesaid five-day period."

It is undisputed that on February 4, 2009, Plaintiffs applied for a Certificate of Occupancy for Phase II of the restaurant from Defendant Parakh, who as the Building Official is empowered to issue said Certificates. Harrison Township Zoning Ordinances § 16.01. No Certificate of Occupancy was ever issued. It is alleged by Plaintiffs that Defendants never refused to issue a Certificate, but simply never issued the Certificate.

**February 6, 2009 Incident and February 9, 2009 "Parakh Report"**

On February 6, 2009, two days after applying for a Certificate of Occupancy, Plaintiffs held an event at their restaurant. They advertised this event as a "Grand Opening Party." Plaintiffs unpersuasively state that the name of the party did not mean any new part of the restaurant was opening, but rather was an attempt to attract more business. Compl. ¶ 39. It is disputed whether this party took place only in the old portion of Gino's Surf, or also involved the Phase I and Phase II additions to the restaurant. At 8:30 P.M., Defendant Parakh arrived at Gino's Surf (the original restaurant) accompanied by two "Ordinance Officers." Plaintiffs allege that Parakh and the Officers remained in the Gino's Surf portion of the restaurant and told customers they had to leave because the business was being shut down. Plaintiffs allege this continued until 12:00 A.M. on February 7, 2009. Plaintiffs allege that Parakh's actions were "designed to harass plaintiffs . . . defame them and drive them out of business. . . ."

On February 9, 2009, Defendant Parakh presented a Report to the Harrison Township Board regarding the February 6, 2009 incident. Plaintiffs assert that Parakh's report is untrue and misleading. See Compl. ¶¶ 46-198. In the report, Parakh stated that he had heard a "Grand Opening" would be taking place, and had contacted one of the owners, Frank Nazar Jr., and in a meeting on the morning of February 5, 2009, spoke to Nazar and told him that a Certificate of Occupancy had not been issued so that any party could not take place in the Phase II area.

Parakh states in the report that later in the day, he was told by the Deputy Treasurer of the Township Board to speak to Plaintiffs and "direct them to restrain or cease the Grand Opening Party in the area under construction or it would create negative publicity for the Township." A notice and placard were hand-delivered to Frank Nazar, Sr. (who signed a notice acknowledging receipt) stating that if persons were in the area under construction it would create an unsafe and dangerous condition and would violate the Township Ordinances, State Building Codes and Fire Marshall mandates.

Parakh also met with Frank Nazar Jr. at noon, who promised the new section would not be open to the public or used at the party. Parakh also discussed a "plastic structure" (a tent) observed by one of the officials who delivered the notice; Parakh allegedly told Nazar that any temporary tent would have to be approved prior to use and that Nazar would have to "go to the Supervisor's Office for permission," and various persons would have to inspect the tent prior to use. Plaintiff describes this statement as "false" and notes that the Township's Zoning Ordinance § 15.05(1) (later repealed) exempts "tents erected on residential and commercial lots for a period not to exceed seven days" from the need to apply for a temporary structure permit. Compl. ¶¶ 60-63. Plaintiff alleges that Parakh was aware of this ordinance and "knowingly made material misrepresentations about plaintiffs and the ordinances in his report." Compl. ¶¶ 65-69. Plaintiff also disputes that Parakh told him about any "danger" of having a party in the newly-constructed area, and states that the meeting was purely about obtaining a Certificate of Occupancy, not in response to Parakh's concerns. Compl. ¶¶ 55-56.

Parakh then contacted the Fire Department and Sheriff's Department to inform them "of the potential gravity of the situation . . . ." On the afternoon of February 6, 2009, Township Supervisor Forlini came to talk to Parakh and told him that Frank Nazar Sr. had called Forlini and asked his permission to use the newer part of the building for the party. Forlini told Nazar that he did not have his permission and that if Parakh found out about use of the new part of the building "he will issue

you a $500 ticket on Monday." Forlini told Parakh he was certain Nazar would use the new portion of the building. Plaintiffs assert that, while Parakh and Forlini may have spoken, the above conversation is "false." Compl. ¶¶ 80-84.

Parakh states in his report that he had no intention to stop any party from taking place, but that the new portion of the building could not be used because it was not safe, insured, did not meet Building Code, and did not have a Certificate of Occupancy. Plaintiffs assert that Parakh "knew" that he (Parakh) "fully intended to prevent plaintiffs from having any party whatsoever" in any portion of the building, knew that Phase II was not under construction, knew that it was safe, knew that it was insured, knew that it met Building Code, and that he "should have issued" a Certificate of Occupancy. Compl. ¶¶ 72-79.

At 8:00 P.M. Parakh allegedly received phone calls from Building Department employees "in another community" and from residents of the Township indicating "that they were making people go through a plastic flammable and combustible passageway with 3-4 large free-standing propane heaters." Parakh called two ordinance officers and the Sheriff and Fire Department and went to Gino's Surf. Parakh described the party at Gino's as "clear pandemonium and the scene was horrifying - it was clearly 'out of control' in the words of many." A number of cars were parked in a no parking area, and fire lanes were blocked. People were also crossing the road in a no cross-walk area. Plaintiffs state that "none of these allegations were the responsibility of Plaintiffs in any way." Compl. ¶ 124.

Parakh alleges that "at least 250 people were in the portion of the building under construction" and hundreds more in the old portion of the building. Parakh alleges additional unsafe conditions involving a "flammable and combustible plastic passageway" and "free standing propane heaters." Plaintiffs assert that all of the above is "completely untrue" and that Parakh never identified any of the dangerous conditions. Compl. ¶¶ 85-94. Plaintiffs specifically deny the existence of "a flammable and combustible" plastic passageway and propane heaters "in the alleged 'plastic passageway.'" Compl. ¶¶ 94-101. It is unclear whether this is because there was no passageway and heaters, or whether Plaintiffs simply dispute that the passageway was combustible and that the propane heaters were "in" the passageway. Parakh next alleges that he encountered Frank Nazar Sr., who told him to "issue the ticket and get the hell out of here." Parakh alleges that Nazar told him he had spent $20,000 on the Grand Opening. Plaintiffs allege this conversation

never occurred. Compl. ¶¶ 102-09. Parakh alleges the staff at the restaurant could not tell him how many cars or patrons were in the parking lot and restaurant. Parakh alleges that the Fire Shift Commander on the scene called the Fire Chief for instructions to deal with the situation, and was told to create a passing lane for emergency vehicles, which was currently blocked. Sheriff's Department officers then "vacated the portion of the building that was under construction and cleared the scene without taking any action to make the scene safe or addressing any of the illegal parking. . . no vehicles were ticketed or towed." Plaintiffs state that no part of the building was cleared and that Parakh actually did not want anyone patronizing the restaurant because customers would "jeopardize defendants' plan to drive plaintiffs out of business." Compl. ¶¶ 140-43.

Parakh states that he and the Ordinance Officers were at the restaurant until midnight "to prevent further endangerment of the public and to ensure safety," again referencing the plastic passageway and propane heaters and the allegedly unsafe conditions on the roadway and parking lot. Parakh stated that he would have been derelict in his duties if he allowed the "Grand Opening" to take place in an unsafe portion of the building under construction and with Code violations, and compares the potential catastrophe to the Rhode Island Night Club Fire. Finally, Parakh discussed passed violations of the Building Code related to the Phase I "Tiki Bar" and stated that Plaintiffs had "a pattern of not following the Building Codes or legal notices creating dangerous conditions for the public."

Plaintiffs allege that the statement in Parakh's report are "false statements, information which defendant Parakh knew to be untrue, and defamatory statements regarding plaintiffs." Compl. ¶ 47. Plaintiffs complaint that Parakh did not identify the "unsafe and dangerous conditions" in the new portion of the building, and that Parakh does not identify how the Township Ordinances, Fire Marshall Mandates, or Building Codes were violated. Compl. ¶¶ 50-53. Plaintiffs are correct in that Parakh does not identify any sort of structural issue with the newly-built Phase II addition that would create an unsafe condition. Plaintiffs also allege they had a valid Certificate of Liability Insurance that covered the Phase II additions, contrary to Parakh's report. Compl. ¶ 58.

### Post-Incident Application for Certificate of Occupancy

Plaintiffs allege they met with Parakh on February 23, 2009, regarding their pending application for a Certificate of Occupancy for Phase II, which they had applied for on February 4, 2009. Plaintiffs allege they asked for a list of deficiencies with regard to Phase II, but that Parakh only identified issues with the parking lot and landscaping, which Plaintiffs state is part of the Phase

I construction. Plaintiffs also allege that Parakh did not discuss any pending ordinance violation tickets. Compl. ¶¶ 204-06. Parakh requested drawings of the building, which were delivered on March 3, 2009. Compl. ¶ 214.

On February 27, 2009, a Township Ordinance Officer came to Gino's Surf and "demanded money" for four $500 tickets; Plaintiffs allege that they had never received any tickets. The Officer allegedly would not answer questions about the basis for the tickets and told Plaintiffs if they did not pay them "[Parakh] . . . will send copies of them to the Michigan Liquor Control Commission." The Officer also allegedly refused to provide copies of the tickets. Compl. ¶¶ 207-09. On March 2, 2009, an Ordinance Officer allegedly hand-delivered an invoice for four "civil infraction-other" charges of $500 each, for a total of $2,000. The "service date" listed was February 6, 2009 (the date of the "Grand Opening"), and the "invoice date" was February 23, 2009. Plaintiffs allege the Officer refused to explain the invoice but told them that they "has [sic] better give [Parakh] the $2,000." Plaintiffs allege they contacted the local District Court and found there were no pending tickets against Frank's Holdings, LLC. Compl. ¶¶ 207-212.

On March 5, 2009 Plaintiffs sent Parakh a letter requesting a final inspection of the Phase II building. They also requested in writing "any and all unfinished construction that would inhibit our Certificate of Occupancy." Sometime in July, 2009, Plaintiffs apparently met with Parakh again to discuss the Certificate of Occupancy. Parakh provided a document entitled "Gino's Surf" which listed "Open Issues." Plaintiffs dispute the list, arguing that some items were part of Phase I, and that some items, such as a "grease trap" to be installed was a "new and unwarranted and costly demand by defendants, without justification." Compl. ¶¶ 219-243.

On August 8, 2009, Plaintiffs "learned that there was to be a hearing in a few hours in ... District Court on ordinance violation tickets issued by the Township." Plaintiffs allege they never received any copy of the tickets. All four tickets were dated February 10, 2009, and concerned the February 6, 2009 "Grand Opening Party." The tickets were made out to Frank Nazar Jr. personally and listed an address "he had not resided [at] in over a year." Plaintiffs allege that Defendants were aware of Nazar's current address at the time the tickets were issued. Plaintiffs allege Defendants knew that Nazar Jr. was not the "owner" of Gino's Surf. Plaintiffs allege the tickets were "solely to harass" Nazar Jr. Plaintiffs allege that the tickets are not for amounts in accordance with the schedule set out by Section 1-7 of Harrison Township's Code of Ordinances, which provide that first violations are $50.00, second violations are $125.00, third violations are $250.000, and fourth or

subsequent violations are $500.00. The tickets issued constitute first, second, third, and fourth violations as noted on the tickets. Ex. 19-22; Compl. ¶¶ 246-267. It appears that a correct total would have been $925.00, although Plaintiffs dispute that the tickets are properly more than first violations, as each ticket alleges a violation of a different section of the Zoning Ordinances.

On August 31, 2009, Plaintiffs received a letter from Parakh which set out a list of forty-two (42) deficiencies in the "Gino's Surf Site Plan" that needed to be corrected prior to issuing a Certificate of Occupancy. The letter also noted the procedure for obtaining a Temporary Certificate of Occupancy. Plaintiffs allege that these site deficiencies had nothing to do with the Phase II addition and were motivated purely by animus. Plaintiffs allege they tried to "explain" why the deficiencies were not accurate, but were rebuffed.

### III. Analysis

### Standard of Review

Plaintiffs correctly note that a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) may not be filed after the Defendants have answered, as has occurred in this case. However, a Motion for Judgment on the Pleadings is permitted at any time after the pleadings are closed but early enough not to delay trial. The standard for a motion for judgment on the pleadings is the same as a motion to dismiss under 12(b)(6). *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). All well-pled allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). To survive a motion to dismiss or for judgment on the pleadings, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### Requirement to Issue Permits

Section 16.01 of the Harrison Township Zoning Ordinances contains the following provision: "The building official shall not refuse to issue a permit when the conditions imposed by this ordinance are complied with by the applicant despite violations of contracts, such as covenants or private agreements which may result upon the granting of said permit." The language "shall not refuse" indicates that the Building Official may not refuse to issue a permit when all the

requirements of the ordinance are complied with. As noted above, Section 16.03 of the Harrison Township Zoning Ordinances governs the issuance of a Certificate of Occupancy. Specifically, Section 16.03(6) governs the application process:

> Certificates of occupancy shall be applied for in writing to the building official coincidentally with application for building permits, and shall be issued within five days after notification of completion of the building, if it is found that the building or structure, or part thereof, or the use of the land is in accordance with the provisions of this ordinance. If such certificate is refused for cause, the applicant shall be notified of such refusal and the cause thereof within the aforesaid five-day period."

### Exhaustion of Administrative Remedies and Ripeness

Defendants argue that Plaintiffs have failed to exhaust their administrative remedies and thus may not seek judicial review. The administrative remedy Defendants suggest is the Harrison Township Zoning Board of Appeals which has the power and duty to "hear and decide appeals where it is alleged there is error of law in any order, requirement, decision or determination made by the building official or planning commission in the administration or enforcement of this ordinance." Mich. Comp. L. § 125.3603(1); Harrison Twp. Zoning Ordinance § 15.01. Defendants also note that Mich. Comp. L. § 125.1514(1) and Harrison Township Zoning Ordinance § 18-9(c) allow appeal to a "Construction Board of Appeals" by any person if "an enforcing agency refuses to grant an application for a building permit, or if the enforcing agency makes any other decision pursuant or related to this act, or the code . . . ."

Plaintiffs make two arguments in response. First, Plaintiffs contend that no decision has been made with regard to the Certificate of Occupancy, and thus they cannot make an appeal. Essentially, Plaintiffs argue that Defendants have neither refused nor agreed to grant a Certificate of Occupancy. However, Plaintiffs have at times argued that Defendants have "refused to grant a Certificate of Occupancy." Moreover, the statute and ordinance allowing appeal of the Zoning Board of Appeals allow appeal from any "requirement, decision, or determination." Thus, Plaintiffs would seem to be allowed to appeal the additional requirements that they have been asked to meet by Harrison Township. Similarly, as Plaintiffs are alleged by Defendants to have violated sections of the Building Code, they would seem to have the right to appeal this decision to the Construction Board of Appeals.

Plaintiffs also argue that they have the right to directly seek remedy in federal court because they seek to vindicate their due process rights. However, Plaintiffs do not allege whether they seek to vindicate their procedural or substantive due process rights. Plaintiffs cite to *Nasieowski v. Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) for the holding that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency . . . ." However, procedural due process means simply that a person has a right to notice and a hearing prior to a decision being made that affects substantive rights; in this case, Plaintiffs do have a right to a hearing, and do not allege that their rights have been affected without a hearing to which Plaintiffs were entitled. Moreover, in *Nasieowski* the complained-of conduct was the changing of the zoning of plaintiff's land without a hearing and notice to the plaintiff. Here, Plaintiffs have not been deprived of a right but rather have sought the licensing of their facility by a municipal body. Plaintiffs do not dispute that there are procedures in place to secure the license in question (the Certificate of Occupancy); rather, their complaints are that they have not been treated "fairly" in the process. This is more of a substantive due process claim. The Court thus finds that Plaintiffs have failed to state a procedural due process claim.

"[T]o establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." *Silver v. Franklin Township Board of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). In *Silver*, the court of appeals held that where a zoning board or other municipal body had the discretion to deny a permit to the plaintiff "even if he complied with certain minimum, mandatory requirements," a plaintiff did not have a protected liberty interest. *Id.* at 1036. Where, as here, the ordinance regarding a Certificate of Occupancy states that the Building Official "shall" issue a Certificate if the ordinance is complied with, the Building Official lacks discretion. The additional language in Section 16.01 of the Zoning Ordinances that the Building Official "shall not refuse to issue" permits when the ordinances are complied with also speaks to the presence of a property right.

Thus, Plaintiffs have a property right based on their expectation that they would receive a Certificate of Occupancy if they comply with the Township Ordinances. Plaintiffs basic complaint is that they have not been treated fairly in this determination. The Court finds that Plaintiffs have made out a *prima facie* substantive due process claim.

Plaintiffs' claim is also ripe for review. The basic rationale of ripeness and exhaustion is that courts avoid "entangling themselves in abstract disagreements." *Michigan Wolfdog Ass'n v. St. Clair County*, 122 F.Supp.2d 794, 800 (E.D. Mich. 2000). The court must make a determination of whether "the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). The factual record in this case is sufficiently developed to allow this Court to make a ruling. Plaintiffs need not exhaust their administrative remedies prior to bringing a substantive due process action. Plaintiffs have sufficiently pled a substantive due process claim sufficient to withstand a motion for judgment on the pleadings. Thus, Defendants' Motion for Judgment on the Pleadings is DENIED with respect to the substantive due process claim, but GRANTED with respect to Plaintiffs' procedural due process claim.

## Equal Protection

Plaintiffs equal protection claim mirrors their substantive due process claim - that they have been treated "unfairly." Plaintiff fails to allege that similarly situated individuals have been treated differently. Plaintiffs also fail to include factual allegations from which the Court can infer that Defendants lack a rational basis for their actions. The Court therefore GRANTS Defendants' Motion for Judgment on the Pleadings with respect to Plaintiffs' Equal Protection claim.

## Temporary Certificate of Occupancy

Defendants argue at length that this Court lacks the authority to review a decision regarding whether or not to issue a Temporary Certificate of Authority, based on discretionary language in granting such a Certificate. Plaintiffs correctly note that they have not asked this Court to rule on this issue. Defendants argument on this issue is therefore moot.

## Entitlement to a Certificate of Occupancy

Defendants argue that factual issues demonstrate that the Plaintiffs had not complied with all aspects of the building code and Township Ordinances, and thus should not have been issued a Certificate of Occupancy. Plaintiffs assert in response that they have complied with all aspects of the Township Ordinances and building code with respect to Phase II, and that the township has used ever-shifting deficiencies and metrics, many related to Phase I, as the basis to refuse the granting of said Certificate. As at this stage the Court is required to accept Plaintiffs' well-pled allegations as true, and Plaintiffs assert that Phase II is fully in compliance with the code and Township

Ordinances, Plaintiffs have sufficiently met their burden to withstand a motion for judgment on the pleadings with respect to possible entitlement to a Certificate of Occupancy.

## Municipal Liability Under § 1983

A municipality cannot be held liable for constitutional damages by an employee on a *respondeat superior* theory, i.e., *solely* because it employs a tortfeasor. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, the action of the employee must be fairly attributable to the municipality, in that the action is a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers," is an action or policy decision that has "received formal approval from the body's official decisionmaking channels" or the action or policy "made by its lawmakers or by those edicts or acts may fairly be said to represent official policy." *Id.* at 690-94.

From this Defendants advance the theory that Plaintiffs are required to demonstrate that "the Harrison Township Board *itself* is the wrongdoer." The Court declines to follow this reasoning. Rather, liability attaches to "acts of the municipality," that is, "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Liability may thus be imposed for "single decisions by municipal policymakers under appropriate decisions." *Id.* That being said, "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Plaintiffs argue that "the actions of defendant Parakh and other representatives of the Township . . . were the execution of the Township's policy or custom as to plaintiffs, thereby making this the official policy of the Township." What Plaintiffs argue is that Parakh, as the Building Official, had final decisionmaking authority with respect to the carrying out of certain municipal functions, in this case the issuing of Certificates of Occupancy. Thus, his actions constitute "final authority to establish municipal policy with respect to the action ordered." The Court adopts this reasoning. The municipality cannot have an "official policy" with respect to Certificates of Occupancy because evaluation prior to issuing said Certificates takes place on a case-by-case basis. Nevertheless, a municipal official is given authority to make final decisions with respect to the applicable Zoning Ordinance. In this case, that official is Parakh. His actions in carrying out the statute have "final authority."

Further, Parakh stated in his February 9, 2009 report about the "Grand Opening Party" that the Deputy Treasurer of the Township Board had told him he had to speak to Plaintiffs and "direct them to restrain or cease the Grand Opening Party in the area under construction or it would create negative publicity for the Township."  While this by itself does not constitute endorsement by the Township Board, it suggests approval of Parakh's actions.

The Court therefore finds that, as a matter of law, Plaintiff has set out a claim of municipal liability under 42 U.S.C. § 1983.  Thus, Defendants' motion for judgment on the pleadings on this issue is DENIED.

### Plaintiffs' State-Law Claims

On March 21, 2012, Plaintiffs filed a Motion to Dismiss their state-law claims without prejudice.  These claims include (1) Business Libel and Slander, (2) Libel and Slander of Plaintiff Frank Nazar Sr., (3) Libel and Slander of Plaintiff Frank Nazar Jr., (4) Breach of Contract, and (5) Breach of Implied Contract.

The Court finds that Defendants will not be unduly prejudiced by dismissal of Plaintiffs' state-law claims without prejudice.  Thus, Plaintiffs' Motion to Dismiss [39] is GRANTED.

### IV. Conclusion

Accordingly, Defendants' Motion to Dismiss and for Judgment on the Pleadings [31] is **GRANTED** with respect to Plaintiffs' Procedural Due Process and Equal Protection Claims and is **DENIED** with respect to Plaintiffs' Substantive Due Process Claim; Plaintiff's allegations regarding an apparent ever-shifting target to obtain a Certificate of Occupancy support a claim for violation of Substantive Due Process.  Plaintiffs' Motion to Dismiss State-Law Claims [39] is **GRANTED**. The Court is hopeful that the intermittent spurts of cooperation between the parties in this case will lead to an amicable resolution of this dispute.

SO ORDERED.

s/Arthur J. Tarnow  
ARTHUR J. TARNOW  
SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 28, 2012