UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FJN LLC, ET AL.,                                          Case No.  09-14262

                    Plaintiffs,                          HONORABLE ARTHUR J. TARNOW
v.                                                       SENIOR UNITED STATES DISTRICT JUDGE

VIJAY PARAKH, ET AL.,

                    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE REMITTITUR [88]; REMITTING PLAINTIFFS' AWARD FOR HISTORICAL LOST PROFITS FROM A $500,000 TO $493,755; DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 50(B) [89]; DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT [96]; GRANTING AS TO ATTORNEY FEES AND DENYING WITHOUT PREJUDICE AS TO COSTS PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS [97]; AND OVERRULING AS UNRIPE DEFENDANTS' OBJECTION [99].**

On June 10, 2014, a jury returned a verdict in favor of Plaintiffs, finding that Defendants had violated Plaintiffs' substantive due process rights.  The jury awarded Plaintiffs $500,000 in historical lost profits, $60,000 in out of pocket costs, and $250,000 in future lost profits.  The jury also awarded Plaintiffs $400,000 in punitive damages as to Defendant Parakh.

Before the Court now are **(I)** Defendants' Motion for New Trial or in the Alternative Remittitur [88], Plaintiffs' Response [92], and Defendants' Reply [95]; **(II)** Defendants' Motion for Judgment as a Matter of Law Pursuant to Federal Rule

Civil Procedure 50(b) [89], Plaintiffs' Response [91], and Defendants' Reply [94]; **(III)** Plaintiffs' Motion to Alter or Amend Judgment [96], Defendants' Response [100], and Plaintiffs' Reply [102]; and **(IV)** Plaintiffs' Motion for Attorney Fees and Costs [97], Defendants' Objection to Plaintiffs' Bill of Costs [99], Defendants' Response [101], and Plaintiffs' Reply [103].

**(I) Defendants' Motion for New Trial or in the Alternative Remittitur [88]**

Defendants move pursuant to Rule 59(a)(1)(A) and 59(e) for a new trial or, in the alternative, remittitur. Defendants assert nine arguments in support of their Motion [88] and Plaintiff rebuts in turn. Rule 59(a)(1)(A) allows a court to grant a new trial on some or all issues for any reasons for which a new trial has previously been granted in federal court. Rule 59(e) allows a court to alter or amend a judgment upon motion filed no more than twenty-eight days after the close of trial.

First, Defendants argue that the jury's $500,000 award for historical lost profits is excessive because Plaintiffs' expert calculated only $101,935 in historical lost profits. Plaintiffs respond that the $101,935 figure only relates to customers that would have frequented Plaintiffs' Phase II construction had it been open in 2009 in spite of the bad publicity from the grand opening party. Plaintiffs assert that the $101,935 figure excludes those customers that would have frequented Plaintiffs' restaurant had there been no bad publicity from Defendants' improper actions related

to the grand opening party. Defendants reply that Jury Instruction 48 limited Plaintiffs' damages to before January 20, 2010.

"In evaluating the jury award, the primary consideration is whether the award is within the range of proof. '[T]he determination of whether a jury's verdict is excessive is resolved by the discretionary consideration of the trial judge.'" *Meyers v. Wal–Mart Stores, E., Inc.*, 257 F.3d 625, 633 (6th Cir. 2001). A trial court "is sharply limited in its ability to remit a jury verdict." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004). The "remittitur standard favors maintaining the award, unless the award is beyond the range supportable by proof . . ." *Id.*

Plaintiffs' expert Neil Steinkamp submitted the following findings into evidence:

> 76. The total present value of historical lost profits from February 2009 through January 2010 was calculated to be $101,935. My analysis of historical lost profits damages relating to the bar closure relates exclusively to those customers that would have frequented the bar and grill had it been open, and *excludes "but-for" profits associated with lost customers that were lost due to the actions of the Defendants and the related negative publicity*.
>
> 149. Assuming Defendant is found liable by a Trier of Fact, I have concluded, based on my review of the documents and evidence provided to me in this matter, that Plaintiff has incurred damages of:
>
> > . . .
> >
> > c. Total Historical Lost Profits from Loss of Customers: $403,981 to $493,755

Trial Ex. 126 at p. 17 ¶76 (emphasis added); p. 34 ¶ 149(c).  The very language of the report indicates that the $101,935 figure only includes customers that would have patronized the restaurant had it been open during 2009 in spite of the negative publicity generated by Defendants' actions at the grand opening.  The portion of paragraph seventy-six italicized above indicates that the $101,935 figure excludes profits from customers who would have patronized the restaurant had the restaurant been open during 2009 if there had been no negative publicity from the grand opening.  Plaintiffs submitted proof that their maximum historical lost profits totaled $493,755.  The jury's award of $500,000 is outside the range of proof.  The Court grants Defendants' Motion for Remittitur [88] as to historical lost profits and reduces the Plaintiff's award for historical lost profits from $500,000 to $493,755.

Second, Defendants argue that Plaintiffs waived punitive damages by failing to include punitive damages in the revised joint final pretrial order.  A trial court does not err by instructing the jury on punitive damages if plaintiff fails to reassert its claim for punitive damages in the final pretrial order provided plaintiff asserts a claim for punitive damages at outset of litigation in the complaint and amended complaint.  *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 729–30 (6th Cir. 2012).  Plaintiffs requested exemplary damages in their Complaint [1] and Amended Complaint [51]. [1] at 75; [51] at 67.  Plaintiffs did not waive punitive damages.

Third, Defendants argue that the jury award of punitive damages against Parakh is against the great weight of the evidence.  The Court instructed the jury:

> You may also award punitive damages to Plaintiff.  In order to award punitive damages, Plaintiff must show that Vijay Parakh's conduct was motivated by an evil motive or intent or that it involved reckless or callous indifference to Plaintiff's federally protected rights.

Jury Instruction 49.  Defendants argue that they put forth evidence during trial that Parakh was motivated by legally permissible reasons, namely Parakh's own testimony.  Plaintiffs respond by highlighting all of the evidence they put forth during trial that Parakh acted based on improper motive.  The jury's award of punitive damages indicates that the jury simply credited Plaintiffs' evidence over Defendants' evidence as to Parakh's motive.  The award of punitive damages was not against the great weight of the evidence.

Fourth, Defendants argue that the $400,000 punitive damage award against Parakh is excessive.  The Court must consider three factors when reviewing punitive damage awards. Namely, (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).  "Perhaps the most important indicium of the reasonableness of a punitive

damages award is the degree of reprehensibility of the defendant's conduct." *Id.*, at

575 The Supreme Court has

> instructed courts to determine the reprehensibility of a defendant by
> considering whether: the harm caused was physical as opposed to
> economic; the tortious conduct evinced an indifference to or a
> reckless disregard of the health or safety of others; the target of the
> conduct had financial vulnerability; the conduct involved repeated
> actions or was an isolated incident; and the harm was the result of
> intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

The repeated conduct factor "'require[s] that the similar reprehensible conduct

be committed against various different parties rather than repeated reprehensible acts

within the single transaction with the plaintiff.'" *Chicago Title Ins. Corp. v.

Magnuson*, 487 F.3d 985, 1000 (6th Cir. 2007). Plaintiffs' evidence showed that

Parakh used his governmental power to improperly interfere with Plaintiffs' business.

Only one of the reprehensibility factors are present in this case—Parakh's conduct

was intentional. In cases where only one of the reprehensibility factors is present, a

ratio of punitive to compensatory damages in the range of 1:1 to 2:1 is all that due

process will allow. *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487

(6th Cir. 2007). The $400,000 punitive damage award is less than half of the

$803,755[1] in compensatory damages that the jury awarded, well below the *lower* 1:1

guideline.

---

[1] Total compensatory damages after remittitur *supra*.

Defendants attempt to analogize *Dorr v. City of Ecorse*, 305 F. App'x 270 (6th Cir. 2008) to the case at bar. In *Dorr*, the mayor of the city of Ecorse prevented the plaintiff from obtaining a certificate of occupancy, thereby preventing the plaintiff from selling his home. Plaintiffs satisfactorily distinguish *Dorr* by arguing that there is a material difference between being temporarily prevented from selling one's home and being prevented from operating a business. For Plaintiffs here, operating time lost is not recoverable, whereas Dorr was eventually enabled to sell his house with no loss of value. The facts of this case are unusual, therefore the Court weighs *Gore* factor three as neutral. Given that the first two *Gore* factors weigh in favor of not disturbing the jury's award of punitive damages, the Court finds that it was not excessive.

Fifth, Defendants argue that damages for future lost profits should not have been submitted to the jury. Plaintiffs sought over $1,000,000 in future lost profits and the jury awarded $250,000. Defendants reassert the arguments they raised in their motion in limine to exclude future lost profits and the Court remains unpersuaded for the reasons it previously stated on the record. Defendants also attack Plaintiffs' expert's method of calculating future lost profits. At trial, however, Defendants own expert did not criticize Plaintiffs' expert's method of calculating future lost profits. The jury was satisfied with Plaintiffs' expert's extensive report on future lost profits.

Defendants next argue that the jury's future lost profits award was based on evidence of defamation that was improperly presented to the jury. The Defendants

point to one paragraph of Plaintiffs' expert report that states Parakh made defamatory statements about the safety of Plaintiffs' restaurant and two paragraphs that allude to Parakh's alleged defamatory statements. The trial exhibits in this case were thousands of pages long. Defendants' argument that the jury awarded future lost profits on the basis of three potentially improper sentences in those exhibits is an unlikely speculation at best. Defendants' assertion becomes even more unlikely when one considers that lay jurors would likely not know the legal import for this case of the term of art "defamatory." Defendants' final argument that Plaintiffs waived future lost profits because it was not mentioned in their final pretrial order fails for the same reasons elucidated *supra* p. 4, vis-a-vis punitive damages.

Sixth, Defendants argue that they are entitled to a new trial because the Court did not submit instruction number 41-A regarding the effect of site plan approval to the jury. Defendants' proposed jury instruction 41-A would have read:

> An approved site plan becomes part of the record of approval, and construction relating to the approved site plan must be consistent with the approved site plan.

A "district court's refusal to give a jury instruction constitutes reversible error if: '(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case.'" *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 820 (6th Cir. 1999) (quoting *Sutkiewicz v. Monroe*

*County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997)). "A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir. 1990). Defendants' proposed jury instruction was based on MCL 125.3501(2), which in part states:

> the site plan . . . shall become part of the record of approval, and subsequent actions relating to the *activity authorized* shall be consistent with the approved site plan . . .

(emphasis supplied). In this case, the "authorized activity" was a restaurant and car museum. Nowhere does the statute say that construction must be consistent with the approved site plan. Defendants' proposed instruction was not a correct statement of law. Their argument, therefore, fails the test for reversible error at element one.

Seventh, Defendants argue the jury's $60,000 award for Plaintiffs' out of pockets costs is excessive. A trial court "is sharply limited in its ability to remit a jury verdict." *Champion*, 380 F.3d at 905. The "remittitur standard favors maintaining the award, unless the award is beyond the range supportable by proof . . ." *Id.* Plaintiffs' expert offered proof that Plaintiffs had incurred $116,986 in out-of-pocket costs. Defendants argue that some of the costs Plaintiffs claim they incurred were for work they would have had to do anyway. Plaintiffs highlight Plaintiff Frank Nazar, Jr.'s testimony that they had to re-do work due to that actions of Defendants. The jury's award for out-of-pocket costs simply indicates that the jury credited the Plaintiffs'

evidence over Defendants' evidence.  Further, the award for out-of-pocket costs was well within the range of proofs.

Eighth, Defendants argue the Court's refusal to take judicial notice of M.C.L. 289.6115 entitles them to a new trial.  The Court cannot find evidence in the record that it refused to take such notice, but will presume Defendants' characterization for the purposes of this analysis.  Michigan Compiled Law 289.6115(1) states:

> After completion of the construction, alteration, conversion, or remodeling and before the opening of a food service establishment, the license applicant or license holder shall notify the director of the completion, shall submit an application for a license to operate the food service establishment, and shall arrange for a preopening evaluation.

Defendants had the option to introduce the statute via witnesses, but elected to forgo that option.  Additionally, Defendants did argue in front of the jury that Plaintiffs were not entitled to damages due to Defendants' actions regarding the certificate of occupancy because Plaintiffs did not have approval from the Health Department anyway.  *See e.g.* trans. 6/10/14 at 11:08:29.  Plaintiffs argued that as an existing food establishment, because they did not build another kitchen they did not need another food service license.  Plaintiffs alternatively argued that it would have been futile for them to have sought Health Department approval given their lack of a certificate of occupancy.  The jury heard each of the parties' relevant arguments on this point.  The Court's alleged refusal to take judicial notice of a Michigan statute did not prejudice Defendants.

Ninth, Defendants argue that the jury's finding that Defendants violated Plaintiffs' substantive due process rights was against the great weight of the evidence. Defendants argue that Plaintiffs never had final approval to occupy the building on the basis of several missing permits. As Plaintiffs argue, however, the Defendants' improper withholding of permit and certificate approval is what gave rise to this action. The jury heard the voluminous amounts of evidence from both sides and decided that Plaintiffs had proved their case. After a review of record, the Court finds that the jury verdict on liability is not against the great weight of the evidence.

## (II) Defendants' Motion for Judgment as a Matter of Law Pursuant to Federal Rule Civil Procedure 50(b) [89]

Defendants move pursuant to Rule 50(b) for judgment as a matter of law with respect to Plaintiffs' substantive due process claim. "A renewed motion for a judgment as a matter of law following an adverse jury verdict 'may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences . . . reasonable minds could come to but one conclusion in favor of the moving party.'" *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 414 (6th Cir. 2012) (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005)). Judgment as a matter of law is appropriate only where there is no "legally sufficient evidentiary

basis" for a reasonable jury "to find for the [non-moving] party on that issue." FED. R. CIV. P. 50(a)(1). The Court may not substitute its own interpretation of the evidence for the jury's, even if it would have reached a different conclusion. *Barnes*, 401 F.3d at 738. Defendants assert five arguments in support of their Motion [89].

First, Defendants reassert their argument from their Rule 56 Motion [54] that Plaintiffs do not have a substantive due process interest at stake in this case. The Court finds this argument unpersuasive for the reasons stated in its March 28, 2014 Order [41] and on the record at the hearing on Defendants' Motion for Summary Judgment [54] on May 30, 2013. Specifically,

> "[T]o establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." *Silver v. Franklin Township Board of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). In *Silver*, the court of appeals held that where a zoning board or other municipal body had the discretion to deny a permit to the plaintiff "even if he complied with certain minimum, mandatory requirements," a plaintiff did not have a protected liberty interest. *Id.* at 1036. Where, as here, the ordinance regarding a Certificate of Occupancy states that the Building Official "shall" issue a Certificate if the ordinance is complied with, the Building Official lacks discretion. The additional language in Section 16.01 of the Zoning Ordinances that the Building Official "shall not refuse to issue" permits when the ordinances are complied with also speaks to the presence of a property right.

Order [41] at 10. Given the legal posture from *Silver*, the Court cannot conclude that "viewing the evidence in a light most favorable to" Plaintiffs and "giving [Plaintiffs]

the benefit of all reasonable inferences . . . reasonable minds could come to but one conclusion in favor of" Defendants. *Static Control*, 697 F.3d at 414.

Second, Defendants reassert their argument from their 12(b)(6) Motion [31] that Plaintiffs did not produce sufficient evidence to establish that Defendant Harrison Township should be held liable pursuant to § 1983 for violating Plaintiffs' substantive due process rights. Defendants assert that Parakh's February 9, 2009 report was the Court's basis for concluding that Harrison Township should be held liable pursuant to § 1983 and denying its Motion to Dismiss [31]. Defendants argue that because Plaintiffs did not introduce the report into evidence at trial, the jury did not have sufficient evidence to find Harrison Township liable. In its previous Order [41], the Court concluded that the nature of Defendant Parakh's job was such that his decisions have final authority and therefore he makes municipal policy. [41] at 12–13. The jury heard evidence about Parakh's actions and found both him and the Township explicitly liable. The Court also concluded that the Parakh's actions were attributable to the Township as a matter of law. The jury, therefore, was able to view all of the evidence that Plaintiffs presented as relevant to both Defendants. As such, the Court cannot conclude that "viewing the evidence in a light most favorable to" Plaintiffs and "giving [Plaintiffs] the benefit of all reasonable inferences . . . reasonable minds could come to but one conclusion in favor of" Defendants. *Static Control*, 697 F.3d at 414.

Third, Defendants reassert their argument from their 12(b)(6) Motion [31] that Parakh is entitled to qualified immunity.   To analyze claims of qualified immunity the court uses a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005).  The jury has answered both of those inquiries in favor of Plaintiffs and the Court is now reviewing the record in the light most favorable to Plaintiffs.  Consequently, the Court again concludes that Parakh is not entitled to qualified immunity.

Fourth, Defendants argue that Plaintiffs failed to demonstrate that Defendants deprived them of a property right because they were not entitled to a certificate of occupancy due to missing permits and certificates.  As Plaintiffs previously argued, however, the Defendants' improper withholding of permit and certificate approval is exactly what gave rise to this action.  Defendants may not use their wrongdoing as a basis for undermining Plaintiffs' rights.

Fifth, Defendants argue that the jury lacked any legally sufficient evidence to find that Parakh's conduct in not issuing Plaintiffs a certificate of occupancy was motivated by an evil motive or intent or that it involved reckless or callous indifference.  Parakh's motive in denying Plaintiffs a certificate of occupancy was a genuinely disputed question of question of material fact that was for the jury to

decide. Plaintiffs put forth evidence that Parakh acted based on an improper evil intent and the jury credited that evidence. For example, Plaintiffs put forth evidence that Parakh believed Councilperson Mike Rice was Plaintiffs' representative and he acted based on that presumption. The Court therefore cannot conclude "viewing the evidence in a light most favorable to [Plaintiffs] . . . reasonable minds could come to but one conclusion in favor of [Parakh]." *Static Control*, 697 F.3d at 414.

**(III) Plaintiffs' Motion to Alter or Amend Judgment [96]**

Plaintiffs move pursuant to Rule 59(e) to amend the judgment to allow Plaintiffs to recover pre-judgment interest. Rule 59(e) allows a court to alter or amend a judgment upon motion filed no more than twenty-eight days after the close of trial. The disposition of a motion filed under Rule 59(e) is "entrusted to the court's sound discretion." *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

Pre-judgment interest is intended to make the plaintiff whole as it "is an element of complete compensation." *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994); *see also Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 376 (6th Cir. 2009) (finding that in the ERISA context, an award of prejudgment interest is "compensatory, not punitive"). There is no Sixth Circuit case law describing the standards for awarding pre-judgment interest in the context of substantive due process violations except for *Young v. Langley*, 840 F.2d 19 (6th Cir. 1988) (Table). When defendants are found liable under federal statutes that do not

mandate the award of pre-judgment interest, "the district court may do so at its discretion in accordance with general equitable principles." *Shelby Cnty.*, 581 F.3d at 376.  "One instance when the denial of the award is appropriate is when, as in this case, the district court concludes that the plaintiff has been compensated fully for the injury he has suffered." *Young*, 840 F.2d 19 at *1.  "The rule governing the award requires a district court to consider whether in its opinion the plaintiff has been compensated fully for his injury." *Id.*, at *2.

The jury reviewed the Plaintiffs' expert's report and arrived at the award amounts listed in the jury verdict—$500,000 in historical lost profits (remitted by this Order to $493,755), $60,000 in out of pocket costs, $250,000 in future lost profits, and $400,000 in punitive damages.  With regard to the $250,000 future lost profit award, the time value of money actually weighs against awarding pre-judgment interest. Further, punitive damage awards are not amenable to pre-judgment interest because they are not compensatory in nature.  The only awards for which Plaintiffs could be awarded pre-judgment interest, therefore, are historical lost profits and out of pocket costs.   As to historical lost profits, the Plaintiffs' expert's estimates have already accounted for the time value of money and the jury awarded Plaintiffs the upper limit of his estimates. Tr. Ex. 126 at p. 17 ¶71. Further, Plaintiffs are receiving their award of historical lost profits without having to endure the risks and costs that would usually be associated with generating those revenues.  As to out of pocket costs,

Plaintiffs argue they would not have outlaid those expenses for physical improvements but for Defendants' improper behavior. Plaintiffs, however, are still reaping the benefits of those expenditures in the form of the physical improvements to their property. The Court is satisfied that Plaintiffs have been fully compensated for their injuries.

**(IV) Plaintiffs' Motion for Attorney Fees and Costs [97]**

Plaintiffs move pursuant to 42 U.S.C. § 1988, Rule 54(d)(1), and Local Rule 54.1 for an award of attorney fees and costs. In total, Plaintiff counsel seeks $273,050.15 in attorney fees and $42,794.93 in costs.

Defendants filed an Objection [99], arguing that Plaintiffs' Bill of Costs was untimely by one day. A party seeking costs must file a Bill of Costs no later than 28 days after the entry of judgment. The Court entered the Judgment [87] on June 18, 2014. Plaintiffs' Motion for Fees [97] was filed on July 16, 2014 at 11:40 p.m. Plaintiff counsel states that the volume of the exhibits to the Motion [97] caused the Court's ECF system to time out during uploading. Accordingly, Plaintiff counsel filed the Exhibits [98] to the Motion [97] separately. Plaintiff counsel successfully uploaded the Exhibits [98] at 1:52am on July 17, 2014. Electronic Case Filing Rule 15 states "filing electronically must be completed before 12:00 midnight (Eastern Time) in order to be considered timely filed that day, unless a technical failure . . . occurs." However, "[a] post-judgment motion that extends the time to appeal also

extends the time to file a bill of costs under this rule until 28 days after the Court rules on the post-judgment motion."  Local Rule 54.1 cmt. (citing *Miltimore Sales, Inc v International Rectifier*, *Inc.*, 412 F.3d 685 (6th Cir. 2005)).  Defendants' June 25, 2014 Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) [89] qualifies as a motion that extends the time to appeal.  FED. R. APP. P. 4(a)(4)(I).  The Court ruled on Defendants' Motion [89] in this Order, accordingly, Plaintiffs have 28 days after the entry of this Order to file a timely Bill of Costs.  Plaintiffs have not yet followed the proper procedure for submitting a Bill of Costs, nor have they missed the deadline for doing so.  *See infra* pp. 27–28.  Accordingly, Defendants' Objection [99] is overruled as unripe.

### (A) Attorney Fees

In their Response [101], Defendants also argue that Plaintiffs' supporting documentation for attorney fees was filed untimely.  "A motion for attorneys' fees and related non-taxable expenses pursuant to Fed. R. Civ. P. 54(d)(2) must be filed no later than 28 days after entry of judgment."[2]  Local Rule 54.1.2(a).  "Where a request for reconsideration under Fed. R. Civ. P. 59(e) has been filed, the time limit shall begin to run upon the denial of the motion."  Local Rule 54.1.2 cmt. (citing *Miltimore*,

---

[2] Although Plaintiffs move for attorney fees pursuant to § 1988(b), the Court will apply the limits for motions brought pursuant to Rule 54(d)(2).  *See Horne v. City of Hamilton, OH*, 181 F.3d 101 at *1 (6th Cir. 1999) (Table) (applying the time limits for Rule 54(d)(2) motions to § 1988(b) motions).

412 F.3d 685). Defendants' June 25, 2014 Motion for New Trial or in the Alternative Remittitur [88] was a motion made pursuant to Rule 59(e). Defendants' Reply [95] at 1. The Court denies Defendants' Rule 59(e) Motion [88] in this Order. Accordingly, Plaintiffs would have until 28 days after the entry of this Order to file a timely motion for attorney fees and supporting documentation. Plaintiffs' supporting documentation for their Motion for Attorney Fees [97] was timely submitted.

In their Response [101], Defendants also argue that Plaintiffs waived an award of attorney fees and non-taxable costs because they did not request them in the joint final pretrial order. Defendants cite cases that stand for the proposition that *claims* not mentioned in the joint final pretrial order or theory of the case may be considered abandoned. *See Leigh v. Bureau of State Lottery*, 876 F.2d 104 (6th Cir. 1989) (Table); *McKinney v. Galvin*, 701 F.2d 584, 585–86 n.3 (6th Cir. 1983). Plaintiffs do not attempt to assert a new claim by seeking to recover attorney fees and costs. There is no Sixth Circuit precedent that a prevailing party waives the right to recover attorney fees under § 1988(b) by not requesting them in a joint final pretrial order.

Section 1988(b) provides that an award of reasonable attorney fees to prevailing parties in actions brought pursuant to § 1983 is up to the discretion of the district court. "The purpose of § 1988 is to ensure 'effective access to the judicial process for persons with civil rights grievances.'" HR REP. NO. 94-1558, p. 1 (1976).

"Congress expressly stated that the prevailing party 'should ordinarily recover an attorney's fees unless special circumstances would render such an award unjust.'" *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982) (citing the SENATE REP. NO. 94-1011, reprinted in 1976 U.S. CODE CONG. & ADMIN. NEWS, p. 5908; *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) ("a prevailing plaintiff should receive fees almost as a matter of course")).  Defendants identify no special circumstances that would cause an award of attorney fees to be unjust in this case.  Accordingly, the Court is persuaded that Plaintiffs are entitled to an award of attorney fees pursuant to § 1988(b).

"The primary concern in an attorney fee case is that the fee awarded be reasonable," one that is adequate to attract competent counsel, but does not yield a windfall for lawyers. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  The Court begins by determining the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by her court-ascertained reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court may adjust the "lodestar" to reflect relevant considerations specific to this case.  *Reed*, 179 F.3d at 471–72.  When determining the initial lodestar or adjusting it, the Court may consider the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  *Hensley*, 461 U.S. at 429–30.  The twelve factors are: (1) the time and labor required by a given case; (2)

the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717–19.

The Court will begin by utilizing the hourly rates of $300.00 for Attorney Victor and $125.00 for her two legal assistants, Lauren Ford and Steve McCollum. Using those rates and the hours logged in Plaintiff counsel's invoices [98-3]–[98-8], the Court calculates Plaintiff counsel's firm's lodestar as $264,850.00. In her affidavit, Plaintiff counsel Victor states that her firm's fees in this case total $262,039.75. The Court will use the figure to which Plaintiff counsel has sworn—$262,039.75—as the lodestar for her firm.

Plaintiff Co-counsel Attorney Horowitz submitted an invoice for forty-three hours of work at $250.00 an hour, yielding an initial lodestar of $10,750.00. Horowitz also submitted an invoice for $260.40 in costs for mileage and parking fees.

In their Response [101], Defendants assert several arguments that Plaintiffs' requested fee is unreasonable. First, Defendants argue that Plaintiff is not entitled to

collect fees for work performed by Lauren Ford and Steve McCollum. Ford and McCollum worked as legal assistants in this matter. Ford is now a licensed attorney and McCollum is a law school graduate. The fee in § 1988(b) "must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). The Court will award the fees for Ford and McCollum's work.

Second, Defendants argue that the Court should disallow co-counsel Horowitz's fees. At the request of Defense Counsel, the Court required Plaintiffs to retain co-counsel Horowitz due to concerns about primary counsel's health. Plaintiff counsel even moved during the trial to excuse co-counsel Horowitz, indicating that she was trying to avoid incurring unnecessary fees. Horowitz actively participated in this litigation by quickly familiarizing himself with the case, meeting with clients and witnesses in preparation for trial, and attending trial every day. He was unable to take on other matters while he worked on this case. The Court approves Horowitz fees totaling $10,750. Attorney Horowitz should refer to the Court's analysis *infra* pp. 27–28 regarding the procedure for recovering his $260.40 in costs.

Third, Defendants argue that Plaintiffs did not analyze the twelve *Johnson* factors. A highly important *Johnson* factor is the result achieved. *Hensley*, 461 U.S.

at 435–36. "Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Id.* at 435. A "strong presumption" favors the prevailing lawyer's entitlement to her lodestar fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "[M]odifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Defendants have presented no reason that this and the Court does not find this case is one of the rare and exceptional cases warranting departure from the lodestar. Defendants also argue that Plaintiffs failed to justify Attorney Victor's $300 per hour rate. The Court finds that $300 is a reasonable hourly rate for an attorney with over thirty years of experience specializing in complex commercial litigation and whose skill is demonstrated by the result in this very case.

Fourth, Defendants argue that Plaintiff's $262,039.75 fee is excessive, citing the hours billed for drafting the Complaint [1] and a Motion for Temporary Restraining Order [8]. The Court finds that 25.5 hours to draft an idiosyncratic complaint seventy-seven pages long and containing 374 paragraphs is reasonable. Defendants also argue that 31.5 hours to draft a Motion for Temporary Restraining Order is excessive. There are ten entries that include a note about work on the Motion for Temporary Restraining Order [8]; the total time of those ten entries is 31.5 hours.

Of those ten entries, six contain references to a considerable amount of other types of work. The 31.5 hours was not solely devoted to drafting the Motion for Temporary Restraining Order [8], which the Court notes was a seventy page filing. Contrary to Defendants' assertion, *Paeth v. Worth Township*, No. 08-13926 2010 WL 4867406 (2010) (Lawson, D.J.) is not instructive here regarding reasonable amounts of time spent drafting a complaint or motion for temporary restraining order—in *Paeth* they were nineteen pages and twenty-fours pages respectively. Nor does *Paeth* indicate that the Court should disallow McCollom's fees as duplicative. *Paeth* disallowed fees for duplicate *attorneys*, McCollom is not an attorney. Defendants argue that fifteen of Plaintiff counsel's billed hours were for work performed in state court. The Court will not reduce the lodestar for time Plaintiff counsel and her assistants spent representing Plaintiffs in state matters. Part of the theory that gave rise to Plaintiffs' federal case was that the state authorities issued citations to Plaintiffs on the basis of improper motivations. The jury credited that theory. It would be incongruous to reduce Plaintiffs' attorney fees for defending citations the jury found to be wrongful.

### (B) Costs

"[C]osts—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Plaintiffs move to recover $42,794.93 in costs, including a $36,956.25 fee for the expert witness report prepared by Neil Steinkamp of Stout Risius Ross.

In their Response [101], Defendants assert several arguments that Plaintiffs' costs are not recoverable.  First, Defendants argue that Plaintiffs may not recover the $36,956.25 fee for their financial expert witness, Neil Steinkamp.  Expert witness fees may not be taxed as costs under Rule 54(d) unless there is statutory or contractual authority to do so.  *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 739–40 (2007).  "In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."  42 U.S.C. § 1988(c).  This was an action to enforce Plaintiffs' rights under 42 U.S.C § 1983, not § 1981 or § 1981a.  There is no statutory authority to tax expert witness fees under § 1983.  Accordingly, Plaintiffs may not recover Steinkamp's $36,956.25 expert witness fee.

"A party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. *The clerk* will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the Court's web site."  Local Rule 54.1 (emphasis supplied).  "A post-judgment motion that extends the time to appeal also extends the time to file a bill of costs under this rule until 28 days after the Court rules on the post-judgment motion."  Local Rule 54.1 cmt. (citing *Miltimore*, 412 F.3d 685).  Defendants' June 25, 2014 Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) [89] qualifies as a motion that extends

the time to appeal.  FED. R. APP. P. 4(a)(4)(i).  The Court ruled on Defendants' Motion [89] in this Order, accordingly, Plaintiffs have 28 days after the entry of this Order to file their Bill of Costs separately for the clerk to consider.  The Court denies Plaintiffs' Motion for Costs [97] without prejudice to either parties' right to seek review of the Clerk's decision on costs at a later date.

Accordingly,

**IT IS ORDERED** that  Defendants' Motion for New Trial or in the Alternative Remittitur [88] is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiffs' award for historical lost profits is **REMITTED** from a $500,000 award to a $493,755 award.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment as a Matter of Law Pursuant to Federal Rule Civil Procedure 50(b) [89] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Alter or Amend Judgment [96] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Attorney Fees and Costs [97] is **GRANTED** as to attorney fees and **DENIED WITHOUT PREJUDICE** as to costs.

**IT IS FURTHER ORDERED** that Defendants' Objection [99] is **OVERRULED AS UNRIPE**.

**IT IS FURTHER ORDERED** that Plaintiff Counsel Victor is awarded $262,039.75 in attorney fees.

**IT IS FURTHER ORDERED** that Plaintiff Co-Counsel Horowitz is awarded $10,750.00 in attorney fees.

**IT IS FURTHER ORDERED** that if Plaintiffs' attorneys desire to seek their remaining eligible costs—$5,838.68 and $260.40 respectively—they should file a Bill of Costs for the Clerk to consider no later than 28 days from entry of this Order.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        ARTHUR J. TARNOW
Dated: December 12, 2014                SENIOR U.S. DISTRICT JUDGE